UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AMBER BOWENS, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) CAUSE NO. 3:20-CV-379 RLM-MGG |
| | ) |
| SUNSHINE RETIREMENT LIVING, LLC | ) |
| d/b/a HERITAGE POINT ASSISTED | ) |
| LIVING AND MEMORY CARE, | ) |
| | ) |
| Defendant | ) |

OPINION AND ORDER

Amber Bowens, an African American woman, worked for Sunshine Retirement Living as a Certified Nursing Assistant/ Qualified Medication Assistant (CNA/QMA) at its Heritage Point Assisted Living and Memory Care from March 2017 to March 2018, when she resigned. She filed an eight-count complaint against Sunshine Retirement two years later, alleging that she was subject to race-based discrimination by one of her supervisors, Jeff Brinkman, the Executive Director of Heritage Point Assisted Living and a white male (Counts 1-2); that Mr. Brinkman retaliated against her for engaging in protected activity (complaining about the discrimination) (Counts 3-4); that Mr. Brinkman's actions and Sunshine Retirement's failure to properly investigate her complaints and take corrective action created a hostile work environment (Counts 5-8); and that she was constructively discharged as a result, in violation of Title VII and 42 U.S.C. § 1981. Sunshine Retirement's moved for summary judgment, and the court heard

oral argument on its motion on November 1. For the following reasons, the court grants the motion in part and denies it in part.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In deciding whether a genuine issue of material fact exists, the court accepts the non-movant's evidence as true and draw all inferences in her favor. Id. at 255.

Sunshine Retirement moved for summary judgment on all counts contending that:

(1) Ms. Bowens can't prove race discrimination because she wasn't constructively discharged, so there's no actionable adverse action. Sunshine Retirement contends that Ms. Bowens deposition testimony shows that she didn't feel unsafe at work after the incidents on February 7, didn't experience any other "untoward" conduct by Mr. Brinkman or anyone else during that time, and resigned voluntarily because she didn't think Sunshine Retirement acted quickly enough on her complaints about Mr. Brinkman's use of racial slurs on February 7, and hasn't shown that her working conditions "became so intolerable that a reasonable person under similar circumstances would have felt compelled to resign." Cooper-Schut v. Visteon Automotive Systems, No.

      IP-01-899-C-B/G, 2003 WL 1702261, at *11 (S.D. Ind. Mar. 31, 2003). "[A]bsent extraordinary conditions," the employee is expected to "remain on the job while seeking redress." Grube v. Lau, 257 F.3d 723, 727 (7th Cir. 2001);

(2)   Ms. Bowens hasn't presented any comparator evidence;

(3)   Without a constructive discharge, Ms. Bowens can't prove retaliation because she can't show a causal link between any protected activity and an adverse action, and micro-managing or "extra scrutiny and criticism, without something more substantive, do not add up to an adverse employment action." Johnson v. Chao, No. 1:03-CV-1106-JDT-TAB, 2005 WL 4889213, at *8 (S.D. Ind. Aug. 23, 2005); *see also* Hayden v. Heart Center of Hendricks County, No. IP00-1187-C-B/S, 2001 WL 1089528, at *9 (S.D. Ind. Sep. 13, 2001) (manager criticizing work "cannot support a constructive discharge claim" nor will it "support an inference of adverse employment action"); Johnson v. South Bend Comm. School Corp., No. 3:17-CV-825-PPS, 2021 WL 1812721, at *6 (N.D. Ind. May 6, 2021) (criticism did not "alter[] [plaintiff's] working conditions);

(4)   Even if Ms. Bowens could make a prima facie showing of discrimination, she can't prove pretext – can't prove Sunshine Retirement lied about any decisions affecting her employment.

(5) Ms. Bowens can't prevail on her harassment/hostile work environment claims because the events on February 7, 2018 weren't "severe or pervasive"–it was an isolated incident and didn't interfere with Ms. Bowens' work performance. Citing Nichols v. Michigan City Plant Planning Dept., 755 F.3d 601, 601 (7th Cir. 2014) ("the one-time use of a racial epithet is not severe enough to trigger liability"); Smith v. Northeastern Ill. Univ., 388 F.3d 559, 567 (7th Cir. 2004) (""One utterance alone does not create an objectively hostile work environment."); McPhaul v. Bd. of Commissioners of Madison County, 226 F.3d 558, 564 (7th Cir. 2000) ("mere utterance of an...epithet which engender[ed] offensive feelings in an employee [but was not directed at her] [was] not sufficient to establish a hostile working environment"), *overruled on other grounds by* Hill v. Tangherlini, 724 F.3d 965 (7th Cir. 2013) Scaife v. U.S. Dept. of Veterans Affairs, 504 F.SUpp.3d 893, 905 (S.D. Ind. 2020 (same).

(6) Even if Mr. Brinkman's conduct was "severe or pervasive", Sunshine Retirement isn't liable as a matter of law because it acted reasonably to prevent continued harassment – it launched an investigation into the matter as soon as Dick Glaunert and Stephanie Antoni learned of the incident, interviewed the available witnesses, and gave Mr. Brinkman a verbal warning and required him to finish his sensitivity training," even though the findings of the investigation were "inconclusive".

4

Ms. Bowens disputes Sunshine Retirement's characterization of the events in question as "an isolated incident" and the sufficiency of its investigation into those events. She contends that the evidence is contradictory and requires credibility determinations that are reserved for the fact-finder, and concludes that a reasonable jury could find on the basis of the evidence presented that she was subjected to severe and/or pervasive race-based harassment, *citing e.g.* Robinson v. Perales, 894 F.3d 818 (7th Cir. 2018); Dandy v. United Parecel Service, 388 F.3d 263 (7th Cir. 2004); and Rodgers v. Western-Southern Life Insurance Co., 12 F.3d 668 (7th Cir. 1993), that Sunshine Retirement didn't take reasonable steps to prevent or address the harassment, and that her resignation constituted a constructive discharge.

Ambiguities in the evidence must be resolved in Ms. Bowens's favor for summary judgment purposes. Accepting her deposition testimony as true and drawing all reasonable inferences in her favor, the facts are as follows.

On February 7, 2018, Jeff Brinkman, a white male who Sunshine Retirement had recently hired as the Executive Director of Heritage Point Assisted Living and Memory Care, engaged Ms. Bowens, an African American employee, and two other white employees (Dana Bunch and Blair Hale) in a conversation in an effort to get to know them.[1] During the conversation, Mr. Brinkman reportedly asked what type of music they liked and why black people use the "n-word" so much in their music, indicated that he didn't like all the cussing, and asked what

---

[1] Tina Stricker-Colt and Cayla Fargo were present but didn't say anything during the conversation. (Pltf's Exh. 1 at pp. 21 and 25).

the difference was "between the word nigga and nigger…[b]ecause [he] didn't feel like nigga [was] worse than nigger."[2] Ms. Bowens responded that she liked 80's music and that it was "a word in the dictionary, everybody uses it." Mr. Brinkman stated that "he'd worked with black people who said that black people sold their own people into slavery" and that "Al Sharpton was an Uncle Tom nigger", and that "there was a river or lake in Africa named nigger."

Ms. Bowens walked away from the conversation, but later that day Mr. Brinkman walked up behind her and whispered in her ear "what would you do if someone came up to you and called you a nigger to your face?" Ms. Bowens responded that "I would tell them about themselves, but violence isn't the answer if that's what you're looking for." After the events on February 7, Mr. Brinkman began to "micro-manage" Ms. Bowens.

---

[2] The court recognizes that the court of appeals expressed a preference for use of the substitute "n----r" in a recent opinion. Robinson v. Perales, 894 F.3d 818, 824 n.3 (7th Cir. 2018) ("We include this highly objectionable word once because it is the slur actually employed by Perales (he concedes his use of the word on this first occasion), and because persons conducting research on case law relevant to the use of this word in employment cases must be able to find applicable precedent. We will hereafter use 'n- - - -r' in every instance where the word was alleged to have been spoken, and we will use the euphemistic 'n-word' where that is the actual term used by the parties.").

If a word's offensiveness is judged by whether contemporary society uses all of its letters when writing it, and recognizing that other once-highly offensive words are fully spelled in today's judicial opinions under the First Amendment, see, e.g., Mahanoy Area School District v. B. L. by and through Levy, 141 S. Ct. 2038, 2043 (2021) ("The first image B. L. posted showed B. L. and a friend with middle fingers raised; it bore the caption: 'Fuck school fuck softball fuck cheer fuck everything.' "), the word "nigger" might well be the most offensive word in American English. But that offensiveness is the very basis for Ms. Bowens's claim. To sanitize the word in an opinion evaluating her claim would disserve the analysis.

On February 8, 2018, Ms. Bowens called Ethelia Hines, Sunshine Retirement Living's national Director of Health Services, who is also African-American, and told her what happened. Ms. Bowens attests that Ms. Hines said she was "going to get in contact with someone" that could help her, and that she "would be getting a phone call soon." But Ms. Hines reportedly took no action.

Ms. Hines called or texted Ms. Bowens on or around February 20, told her that she needed to talk to Dick Glaunert, Sunshine Retirement's Regional Director of Operations, and gave Ms. Bowens Mr. Glaunert's phone number.

Dick Glaunert attests in his affidavit that he "first learned of plaintiff Amber Bowens' concerns from Ethelia Hines on February 21, 2018," and called the Director/VP of Human Resources, Stephanie Antoni, "that same day to relay the concerns and initiate an investigation."[3]

Stephani Antoni learned of Ms. Bowens' concerns on February 21, 2018, when Dick Glaunert communicated them to her, and called Ms. Bowens the same day. She conducted a telephone interview with Ms. Bowens on February 22, 2018. After hearing Ms. Bowens' account of the incident, Ms. Antoni told her that it was "never appropriate to say what he said" and that her "next step [was] to have a

---

[3] Ms. Bowens submitted a recorded voice message from Ms. Hines in which Ms. Hines states that she "was with Dick last week, so he knows about the situation"; that she told him that Ms. Bowens might be calling him; and that she "knows he will be reaching out to you," but there's no indication when Ms. Hines left that message or when she told Mr. Glaunert about "the situation." (Pltf's Exh. 8).

7

conversation with Jeff ... and others that were present." Ms. Antoni asked Ms. Bowens if she was "ok working with Jeff", and Ms. Bowens responded it's "not going to bother me either way it goes." I just want something done." Ms. Antoni offered to put Ms. Bowens on paid administrative leave during the investigation, but she declined. She advised Ms. Bowens that the investigation would "probably take a few days," at the "very earliest tomorrow" and at the latest "end of Monday", and that she would "give [Ms. Bowens] an update on where we're at" and would "talk to her soon." Ms. Antoni also told Ms. Bowens that if she changed her mind about paid leave, she could call her and offered to give her her cell phone number. During the interview, Ms. Bowens told Ms. Antoni that she felt "disrespected, humiliated, and embarrassed" by Mr. Brinkman's actions.

On March 7, 2018, Ms. Bowens submitted a letter of resignation, giving "two weeks notice."

The following day, Ms. Antonia left a voice message for Ms. Bowens advising that she wanted to follow-up on their conversation about the complaint against Mr. Brinkman, and left her contact information. Ms. Bowens didn't call her back.

Between February 22 and April 13, 2018, Ms. Antoni reportedly interviewed Ms. Bowens, Ms. Hines, Ms. Bunch, Tiffany Comp (Heritage Point's Executive Chef, who allegedly overheard part of the conversation), and Jeff Brinkman; found "inconclusive" evidence of discrimination or harassment, but indicated that the company was imposing verbal discipline "based on Mr. Brinman's admission he

8

did engage in unacceptable conduct".[4] The investigation was closed on April 13, 2018, Ms. Bowens last day of work.

Ms. Bowens focused on her claims of race-based discrimination and harassment in her response to Sunshine Retirement's summary judgment motion and during oral argument, effectively abandoning the retaliation and harassment claims that are based on protected activity. The only protected-activity alleged are the complaints Ms. Bowens made to Ms. Hines, Mr. Glaunert, and Ms. Antoni on February 8, 21, and 22, and she hasn't shown any causal connection between those activities and the termination of her employment or the alleged "micro-management" by Mr. Brinkman following the incidents on February 7. Accordingly, the court grants summary judgment with respect to those claims (Counts 3-4 and 7-8).

To prove race-based discrimination and retaliation, plaintiff must show that she was subject to an adverse action. Only two adverse actions are alleged: constructive discharge and "micro-managing." Micro-managing, without more, doesn't rise to the level of an adverse employment action. *See* Johnson v. South

---

[4] The dates listed in Ms. Antoni's report of the investigation are inaccurate. Her report says the investigation started on February 12, and that she interviewed Ms. Bowens on February 12 and February 16, Ms. Hines on February 13, Ms. Bunch and Ms. Comp on February 13 and 16, and Mr. Brinkman on March 5. [Doc. No. 43-8]. Her affidavit says that: "The events are chronologically correct, but the dates are off about a week or 10 days. It is very likely that, when I was transcribing my notes and reviewing my calendar, I mistakenly looked at the wrong week. Once I added the (wrong) staring date for the investigation, the remaining dates were all off by the same measure. The substance of the investigation is accurate, however." [Doc. No. 43-7].

Bend Comm. School Corp., No. 3:17-CV-825-PPS, 2021 WL 1812721, at *6 (N.D. Ind. May 6, 2021); Johnson v. Chao, No. 1:03-CV-1106-JDT-TAB, 2005 WL 4889213, at *8 (S.D. Ind. Aug. 23, 2005); Hayden v. Heart Center of Hendricks County, No. IP00-1187-C-B/S, 2001 WL 1089528, at *9 (S.D. Ind. Sep. 13, 2001).

Whether Ms. Bowens can prove that she was constructively discharged presents a much closer question. Her primary complaint seems to be that Ms. Hines dropped the ball and Sunshine Retirement didn't act fast enough to investigate her complaint and reprimand Mr. Brinkman, so she quit. Ms. Bowens told Ms. Antoni that she felt "disrespected, humiliated, and embarrassed" when Mr. Brinkman made the remarks on February 7, but when Ms. Antoni asked her if she was "ok working with Jeff", Ms. Bowens responded it's "not going to bother me either way it goes", and declined Ms. Antoni's offer to put her on paid administrative leave pending the investigation.

But the test for constructive discharge isn't subjective, it's objective –whether "a reasonable employee would have felt compelled to resign under the circumstances of th[e] case". Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 677 (7th Cir. 1993) (quoting Brooms v. Regal Tube Co., 881 F.2d 412, 423 (7th Cir. 1989). While "[a]n employee must seek legal redress while remaining in his or her job unless confronted with an 'aggravated situation' beyond 'ordinary' discrimination" (internal citations omitted), a reasonable person could find that "the fact that the insults generating the racially hostile environment flowed from

10

the mouth of a supervisor" elevated the discrimination in this case from "ordinary" to "aggravated". Id. at 677.

Sunshine Retirement's arguments about Ms. Bowens' race-based hostile work environment claims fail for the same reasons.

> To succeed on a claim for hostile environment, a plaintiff must demonstrate that: (1) [s]he was subject to unwelcome harassment; (2) the harassment was based on race (or another protected category); (3) the harassment was severe or pervasive to a degree that altered the conditions of employment and created a hostile or abusive work environment, and (4) there is a basis for employer liability.

Robinson v. Perales, 894 F.3d 818, 828 (7th Cir. 2018). Sunshine Retirement contends that the racial slurs used by Mr. Brinkman on February 7 weren't "severe or pervasive", but rather isolated incidents that didn't effect Ms. Bowens' work performance, and that even if Ms. Bowens could satisfy the "severe or pervasive" prong, Sunshine Retirement isn't liable as a matter of law because it took reasonable steps to address the issue.

"Whether harassment was so severe or pervasive as to constitute a hostile work environment is generally a question of fact for the jury." Robinson v. Perales, 894 F.3d at 828. Factors to consider include: "the severity of the alleged conduct, its frequency, whether it is physically threatening or humiliating (or merely offensive), and whether it unreasonably interferes with the employee's work performance." Id.; *see also* Dandy v. United Parcel Service, Inc., 388 F.3d 263, 271 (7th Cir. 2004). "Within the totality of the circumstances, there is neither a threshold 'magic number' of harassing incidents that gives rise, without more, to

11

liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." Rodgers v. Western-Southern Life Ins. Co., 12 F.3d at 674. "[T]he standard may be met by a single extremely serious act of harassment or by a series of less severe acts." Robinson v. Perales, 894 F.3d at 828. "Perhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'n----r' by a supervisor in the presence of his subordinates." (Internal citation omitted). Id. at 828-829 (quoting Rodgers v. Western-Southern Life Ins. Co., 12 F.3d at 675); *see also* Dandy v. United Parcel Service, Inc., 388 F.3d at 271 (supervisor's use of the term "nigger" impacts the work environment far more severely than use by co-equals).

The repeated use of the racial slur by Ms. Bowens's supervisor in her presence in two separate encounters and her reaction to those statements create a genuine issue as to whether the harassment was severe or pervasive to a degree that altered the conditions of Ms. Bowens' employment and created a hostile or abusive work environment. "That [Bowens] was able to continue performing [her] job well is not dispositive, as the defendants suggest. Interference with work performance is only one factor among many in the calculus", and "[r]esilient employees who manage to perform well in trying circumstances may still prove a hostile environment claim." Robinson v. Perales, 894 F.3d at 830. The test is

12

subjective and objective. Id. at 674; Dandy v. United Parcel Service, Inc., 388 F.3d at 271.

Whether Sunshine Retirement's response to Ms. Bowens's complaints was reasonable is a question of fact for the jury. This might be a different case had she complained for the first time on February 21. But Ms. Bowens testified during her deposition that she complained to Ms. Hines on February 7, and Ms. Hines did nothing about it until February 21. The vagueness of Ms. Hines's affidavit, inconsistencies in the evidence, and the materially inaccurate information contained in Ms. Antoni's report of the investigation inconsistent, present credibility issues that a jury should decide.

For the foregoing reasons, Sunshine Retirement's motion for summary judgment is DENIED as to the race-based discrimination and hostile work environment claims (Counts 1-2 and 5-6), and GRANTED as to the retaliation and hostile work environment claims that are based upon Ms. Bowens' engagement is statutorily protected activity (Counts 3-4 and 7-8).

SO ORDERED.

ENTERED:   November 15, 2021

/s/ Robert L. Miller, Jr.
Judge, United States District Court

13